IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DOLORES INGRAM, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 11-2710 (JBS/JS) |
| v. | : | |
| TOWNSHIP OF DEPTFORD, et al., | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Aaron Benjamin Gorodetzer, Esq.
BROWN - THE LAW FIRM
16 West Market Street
West Chester, PA 19382
     Attorney for Plaintiff Dolores Ingram

Douglas M. Long, Esq.
LONG MARMERO & ASSOCIATES LLP
44 Euclid Street
Woodbury, NJ 08096
     -and-
A. Michael Barker, Esq.
BARKER, SCOTT & GELFAND
Linwood Greene
210 New Road Suite 12
Linwood, NJ 08221
     Attorneys for Defendants Township of Deptford, Deptford
Township Police and Sgt. Michael Taylor

**SIMANDLE**, Chief Judge:

I.  **INTRODUCTION**

This matter is before the Court on Defendants Township of
Deptford, Deptford Township Police and Sgt. Michael Taylor's
("Defendants") motion to dismiss the complaint pursuant Fed. R.
Civ. P. 12(c). [Docket Item 7.]  Plaintiff Dolores Ingram has
filed opposition.  For the reasons discussed herein, the court

will grant in part and deny in part Defendants' motion to
dismiss.

## II.   BACKGROUND

The instant action arises out of Defendant Sgt. Michael
Taylor's alleged use of excessive force on the Plaintiff in
removing her from a municipal court proceeding pursuant to the
order a municipal court judge.

On or about May 13, 2009, Plaintiff Dolores Ingram
("Plaintiff") was a crime victim waiting to testify as a witness
in the Deptford Municipal Court where the Honorable William
Golden presides. (Compl. ¶ 10.) When the case in which Plaintiff
was to testify was called, the defendants had not appeared and
were not in the courtroom.  (Compl. ¶ 11.)

At the time of the incident, the Plaintiff was 74 years old
and had difficulty hearing the judge.  (Compl. ¶ 12.)  The
Plaintiff asked if she could speak to the Judge and explain the
situation.  (Compl. ¶ 12.)  At this point, Judge Golden stated
"remove her from the courtroom."  (Compl. ¶ 13.)

In response to the Judge's request, Defendant Sergeant
Michael Taylor, who was much larger in stature compared to the
Plaintiff, placed the Plaintiff in a hold by placing his right
arm under her chest around her ribs and pushing his left hand
into the center of her back and lifting the Plaintiff off the
ground.  (Compl. ¶ 14.)  The Plaintiff, who suffered from disc

herniations, prior broken ribs and a degenerative hip pleaded with Sergeant Taylor to allow her to walk out of the courtroom on her own.  (Compl. ¶ 15.)  Sergeant Taylor ignored her pleas and continued his hold on the Plaintiff, forcibly removing her from the courtroom.  After carrying her out of the courtroom, Sergeant Taylor left the Plaintiff outside in tears.  (Compl. ¶ 16.)

As a result of Defendant Sergeant Taylor's forcible removal, the Plaintiff allegedly sustained serious physical and emotional injuries.  (Compl. ¶ 17.)  The Plaintiff was unable to and may in the future be unable to attend to her usual duties and affairs. (Compl. ¶ 17.)

Subsequently, the Plaintiff filed the instant action against Defendants Township of Deptford, Deptford Township Police, Sgt. Michael Taylor and John Does 1-50.  [Docket Item 1.]  The Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that the Defendants used unnecessary and grossly excessive force in violation of her Fourth and Fourteenth Amendment rights under the United States Constitution.  The Plaintiff alleges that the Defendants's conduct violated her established rights under the New Jersey State Constitution as well.  Third, the Plaintiff alleges that the Defendants' actions were negligent.  Finally, the Plaintiff brings a cause of action for assault and battery.

The Defendants answered the complaint [Docket Item 4] and filed the instant motion to dismiss pursuant to Fed. R. Civ. P.

3

12(c) [Docket Item 7].  First, the Defendants argue that all claims against Sergeant Taylor should be dismissed because Sergeant Taylor is entitled to absolute quasi-judicial immunity. Second, the Defendants argue that the Plaintiff is barred from asserting her common law tort claims because Plaintiff failed to comply with the notice requirements of the New Jersey Tort Claims Act.  Next, the Defendants argue that the Plaintiff failed to state a legally cognizable claim against the Township of Deptford under the United State Constitution or the New Jersey Constitution.  Finally, the Defendants maintain that the Plaintiff failed to state a legally cognizable claim against the John Doe defendants.

The Plaintiff's opposition argues that the claims against Sergeant Taylor are proper because he is not entitled to absolute quasi-judicial immunity because Sergeant Taylor exceeded the scope of Judge Golden's order and the execution of the order is not a judicial act entitled to judicial immunity.  The Plaintiff concedes that her negligence claim as well as her assault and battery claim are not sufficiently pled.  The Plaintiff also concedes that she has not alleged sufficient facts to support a claim for municipal liability.  However, the Plaintiff urges the court to dismiss these claims without prejudice and grant her leave to amend.  Finally, the Plaintiff agrees that the claims against the fictitious John Doe police officers should be

dismissed because it is apparent from Defendants' answer that Defendant Taylor was the officer who removed the Plaintiff from the courtroom.

## III.  DISCUSSION

### A.  Standard of Review

Judgment on the pleadings pursuant to Rule 12(c), "will only be granted where the moving party clearly establishes there are no material issues of fact, and that he or she is entitled to judgment as a matter of law." DiCarlo v. St. Mary Hosp., 530 F.3d 255, 259 (3d Cir. 2008).  Where the movant alleges that the complaint fails to state a claim upon which relief can be granted, the court applies the same standards as under Rule 12(b)(6).  Turbe v. Government of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991); Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004) (applying Rule 12(b)(6) standard to Rule 12(c) motion).

In order to give defendant fair notice, and to permit early dismissal if the complained-of conduct does not provide adequate grounds for the cause of action alleged, a complaint must allege, in more than legal boilerplate, those facts about the conduct of each defendant giving rise to liability. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a) and 11(b)(3).  These factual allegations must present a plausible basis for relief (i.e., something more than the mere possibility

of legal misconduct).  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009).  In its review of a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S.Ct. at 1949.

**B.  Is Sergeant Taylor entitled to absolute quasi-judicial immunity or qualified immunity?**

**1. Absolute quasi-judicial immunity**

As a general rule, judges acting in their judicial capacity are absolutely immune (in both their individual and official capacities) from suit for monetary damages under the doctrine of judicial immunity.  See Mireles v. Waco, 502 U.S. 9, 9 (1991). Judicial immunity can be overcome only for actions not taken in a judicial capacity, id., or for actions taken in a complete absence of all jurisdiction, id. at 11-12.  Allegations that actions were undertaken with an improper motive diminishes neither their character as judicial actions nor the judge's immunity.  See Forrester v. White, 484 U.S. 219, 227 (1988).

Judicial immunity may extend to professionals who assist

6

courts in their judicial function.  See Hughes v. Long, 242 F.3d 121 (3d Cir. 2001).  Quasi-judicial immunity is given only to public employees who perform judge-like functions and attaches when a public official's role is functionally comparable to that of a judge.  Hamilton v. Leavy, 322 F.3d 776, 785 (3d Cir. 2003).  "When judicial immunity is extended to officials other than judges, it is because their judgments are 'functionally comparable' to those of judges – that is because they, too, 'exercise a discretionary judgment' as part of their function."  Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436 (1993).

     "Absolute immunity does not apply in every action against a judge or court personnel."  Tucker v. I'Jama, 173 Fed. Appx. 970, 971 (3d Cir. 2006).  Instead, the "touchstone" for the applicability of the doctrine of judicial immunity is "the performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights."  Antoine, 508 U.S. at 435-36 (quoting Burns v. Reed, 500 U.S. 478, 500 (1991) (Scalia, J., concurring in judgment in part and dissenting in part)).  The Supreme Court has stated that judicial immunity does not protect the "administrative, legislative, or executive" acts performed by judges.  Forrester v. White, 484 U.S. at 227.  Therefore, "'it [is] the nature of the function performed, not the identity of the actor who performed it, that informs[] [an] immunity analysis.'"  Antoine, 508 U.S. at 435-36

(quoting Forrester v. White, 484 U.S. at 229 (holding judge's hiring practices not judicial in nature)).

The Supreme Court has long held that a judge's exercise of control over the courtroom, including the admission and expulsion of attorneys and litigants, is a judicial act.  See Bradley v. Fisher, 80 U.S. 335, 346-47 (1871) (judge's order expelling attorney from court was "in the lawful exercise and performance of his authority and duty as its presiding justice . . . [and] was a judicial act."); Mireles v. Waco, 502 U.S. at 12 ("[a] judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge.").  Thus, a judge who presides in court and directs the removal of an attorney, party, witness or spectator performs a judicial act for which the judge has absolute judicial immunity.

The Defendants argue that Sergeant Taylor removed the Plaintiff from the courtroom pursuant to Judge Golden's order. Judge Golden was acting in his judicial capacity when ordering the removal of the Plaintiff.  The Defendant argues that Sergeant Taylor should similarly be entitled to absolute quasi-judicial immunity because he was carrying out Judge Golden's directive in removing the Plaintiff from the courtroom.

The Plaintiff argues that Sergeant Taylor is not entitled to absolute quasi-judicial immunity.  Specifically, the Plaintiff maintains she is not challenging Judge Golden's order of removal

or her subsequent removal from the courthouse.  Instead, the
Plaintiff is solely challenging the manner in which Sergeant
Taylor forcibly carried her out of the courtroom.  The Plaintiff
argues that Sergeant Taylor exceeded the scope of Judge Golden's
order by using unnecessary and excessive force in removing her
from the courtroom.  The Plaintiff argues Sergeant Taylor's
manner of removal violated the Fourth and Fourteenth Amendments
and is not protected by quasi-judicial immunity.

A Circuit split exists with respect to whether a court
officer is entitled to absolute quasi-judicial immunity when the
officer allegedly uses excessive force to remove a person from a
courtroom pursuant to a judge's order.  The Third Circuit has not
addressed this issue.[1]  Prior to addressing the competing Circuit

---

[1] The Defendants argue the Third Circuit has "sufficiently
determined" the issue by citing to an unpublished district court
decision, Muhammad v. Weis, No. 08-3616, 2009 U.S. Dist. LEXIS
72759 (E.D.Pa. Aug. 17, 2009). (Defs. Reply Br. at 3.)  First of
all, unpublished district court decisions are not precedential or
binding authority.  Second, the plaintiff in Muhammad alleged
that multiple state court judges and courtroom officers violated
his First Amendment rights by requiring the plaintiff to remove
his kufi when appearing as a litigant in their courtrooms and by
having him removed from the courtroom when he did not comply. Id.
at *45.  The plaintiff in Muhammad alleged that the courtroom
officers acted pursuant to the judges' orders in removing him
from the courtroom.  There were no allegations present that the
courtroom officers exceeded the scope of the judges' orders or
that excessive force was used in removing the plaintiff.  The
district court did not decide the issue of whether a courtroom
officer is entitled to absolute quasi-judicial immunity if the
officer removes a litigant from the courtroom pursuant to a
judicial order but uses excessive force in doing so.  Therefore,
Muhammad is not applicable to the instant case and the
Defendants' reliance is misplaced.  Moreover, the Defendants'

opinions, it is first necessary to discuss the U.S. Supreme Court's decision in Mireles v. Wako, 502 U.S. 9 (1991), which is central to each Circuit's analysis.

In Mireles, the U.S. Supreme Court held that "a judge will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." Id. at 12-13.  A public defender alleged that a state court judge violated his constitutional rights by ordering police officers to forcibly seize him and use excessive force to bring him into the judge's courtroom.  Id. at 10.  The public defender had failed to appear for the initial call of the judge's morning calendar.  Id.  The judge was allegedly "angered by the absence of attorneys from his courtroom" and subsequently ordered the police officers "to forcibly and with excessive force seize and bring plaintiff into his courtroom."  Id.  The officers then allegedly seized the plaintiff with unnecessary force and removed him backwards from another courtroom where he was waiting to appear, cursed him and called him offensive names.  Id.  Then, the officers unnecessarily slammed him through the doors and swinging gates into the judge's courtroom.  Id.

The Supreme Court held the state court judge was entitled to absolute judicial immunity.  Specifically, the Supreme Court

---

complete failure to discuss the circuit split in their briefing was unhelpful to the court and disingenuous to the complexity of this issue.

emphasized that a "judge's direction to court officers to bring a
person who is in the courthouse before him is a function normally
performed by a judge . . . in the judge's judicial capacity."
Id. at 12.  However, the Court noted that the "judge's direction
to carry out a judicial order with excessive force is not a
function normally performed by a judge."  Id. (citations
omitted).  In reasoning that the judge was nonetheless entitled
to judicial immunity, the Supreme Court maintained that the
nature and function of the act, not the act itself, controls the
judicial immunity analysis.  The court also reasoned that the
fact that the judge's order was carried out by court officers did
not transform the judge's action from judicial to executive in
character.  Id. at 13.  Rather, the court stated a "judge's
direction to an executive officer to bring counsel before the
court is no more executive in character than a judge's issuance
of a warrant for an executive officer to search a home."  Id.
Therefore, the court held that while the judge exceeded his
authority, he was nonetheless entitled to judicial immunity.
Importantly, this decision did not address whether the court
officers that executed the judge's order were also entitled to
quasi-judicial immunity and this issue remains unaddressed by the
Supreme Court.

    The first circuit to squarely address this issue was the
Eighth Circuit in Martin v. Hendren, 127 F.3d 720 (8th Cir.

1997).  In Martin, the plaintiff and her son were appearing in municipal court on a traffic charge.  The plaintiff, unasked by the judge, approached the bench twice and refused to sit down when the judge ordered her back.  The judge then ordered the court officer to remove the plaintiff.  A struggle then took place between the court officer and the plaintiff resulting in the plaintiff being struck in the face by the officer.  Id. at 721.  The judge then ordered the officer to "put the cuffs on her."  Id.  The plaintiff attempted to push the court officer and the court officer then flipped the plaintiff face down onto the floor, handcuffed her, pulled her to her feet by the handcuffs and her hair and then removed her from the courtroom.  Id.  The plaintiff then filed suit against the court officer.

The majority opinion held that the court officer was entitled to absolute quasi-judicial immunity.  The majority first found that bailiffs enjoy absolute quasi-judicial immunity for actions specifically ordered by the trial judge and related to the judicial function.  Id. at 721.  The court rejected the plaintiff's argument that the court officer ceased to act in a quasi-judicial capacity when he carried out the judge's removal order using excessive force.  Instead, the majority relied on the Mireles opinion and extended its reasoning to quasi-judicial immunity.  Specifically, the majority found that while the officer may have exceeded the scope of the judge's order, the

officer should not be deprived of judicial immunity "because the action he took was in error . . . or was in excess of his authority." Id. at 722 (quoting Mireles, 502 U.S. at 12-13). The majority further recognized the need for quasi-judicial immunity in this type of situation:

> Because judges frequently encounter disruptive individuals in their courtrooms, exposing bailiffs and other court security officers to potential liability for acting on a judge's courtroom orders could breed a dangerous, even fatal, hesitation. For the criminal justice system to function, ... courts must be able to assume their orders will be enforced.

Id. at 722 (citations omitted). Therefore, the majority opinion held that the court officer was entitled to absolute quasi-judicial immunity.

The dissenting opinion took the opposite view and held the officer was not entitled to absolute quasi-judicial immunity and rather, a qualified immunity analysis was appropriate. First, the dissenting opinion recognized that "the presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." Id. at 722 (citing Antione, 508 U.S. 429, 433 n.4 (1993)). The dissent then discussed the policy reasons supporting judicial immunity which was to ensure judges were at liberty to exercise their independent judgment when deciding the merits of the case and that courts should be cautious when extending the protection of absolute immunity beyond judges and prosecutors. Id.

The dissent then turned to _Mireles_ and argued that the majority opinion had misapplied the Supreme Court's analysis.  In particular, the dissent emphasized that majority's conclusion that the nature of the court officer's actions was quasi-judicial because it was taken at the direction of the judge was flawed because it was based on a "basic factual fallacy."  _Id._ at 723. Specifically, the dissent argued that the majority's opinion was based on "the assumption that the judge instructed bailiff to use excessive force.  The record is barren of such suggestion."  _Id._

Second, the dissent also reasoned that the majority misapplied _Mireles_ because "the Supreme Court in _Mireles_ sought to protect the first-tier decision-making function of a judge." _Id._  The dissent explained:

> Clearly, it is within the traditional function of the judge to direct that there be order in the courtroom. However, it is not the nature of the judicial function that a judge leave the bench and engage a disruptive witness, party, or lawyer by physical force to achieve his or her order. Such function lies within the executive branch, and is characteristic of the function of a law enforcement action in which only qualified immunity is traditionally available.

_Id._ at 723.  Finally, the dissent discussed the potential consequences of the expansion of _Mireles_ extending absolute quasi-judicial immunity to courtroom officers executing a judge's removal order.  The dissent posited the following hypothetical:

> Under the majority's reasoning, if a judge orders a bailiff to remove a litigant from the courtroom, and the bailiff decides that the most expeditious way to accomplish this order is to bash the litigant in the head

14

> with a baseball bat, the bailiff would enjoy absolute immunity. This is not the type of action the doctrine of absolute immunity is designed to protect.

Id. at 723.   Therefore, the dissent reasoned that absolute quasi-judicial immunity was improper and a qualified immunity analysis should be applied to evaluate a court officer's actions in removing a litigant from a courtroom.

After Martin was decided, the Seventh Circuit was next to address the issue of the use of excessive force by an officer in removing a litigant from a courtroom.   The Seventh Circuit agreed with the dissent in Martin and held that absolute quasi-judicial immunity did not apply.   Richman v. Sheahan, 270 F.3d 430 (7th Cir. 2001).

In Richman, a mother and her son, who was planning to testify as a witness, appeared in municipal court for a traffic violation.   The judge continued their hearing to a future date before their case was called.   The mother and son attempted to ask the judge a question but the judge quieted them.   The son continued to speak and the judge ordered him restrained.   Two county sheriff's deputies began to take the son into custody and twelve more deputies entered the courtroom.   All fourteen deputies then attacked the son, forced him to the floor, sat on him and handcuffed him.   The son was physically disabled and did not resist the deputies' attempt to restrain him.   His mother was also restrained by four additional deputies and did not attempt

to resist.  When the son was handcuffed on the floor, he emptied his bladder and bowels and appeared to have stopped breathing. Paramedics rendered emergency assistance and transported him to the hospital where the son was pronounced dead.  The mother then filed a complaint against the deputies alleging violations of her and her son's Fourth and Fourteenth Amendment rights and a claim for wrongful death.  Richman, 270 F.3d at 433-34.

The majority in Richman held that the deputies were not entitled to absolute quasi-judicial immunity and engaged in a similar analysis to the dissenting opinion in Martin.  First, the majority recognized the presumption in favor of qualified immunity rather than extending the protection of absolute judicial immunity.  In addition, the majority emphasized the rationale behind judicial immunity in discouraging collateral attacks on judicial decision making and assisting in establishing appellate procedures to review judicial opinions.  Id. at 434-435.  Further, the majority emphasized that judicial immunity is extended to officials engaged in quasi-judicial decision making and that the deputies in this case did not "exercise a comparable form of discretionary decision making."  Id. at 435.

However, the majority did recognize that when an official undertakes an action pursuant to the explicit direction of a judicial officer, it has been held that the official is entitled to judicial immunity.  Id. at 435.  "The policy justifying an

16

extension of absolute immunity in these circumstances is to prevent court personnel and other officials from becoming a lightening rod for harassing litigation aimed at the court."  Id. (citations omitted).

In analyzing whether the deputies' conduct in this case was entitled to quasi-judicial immunity, the majority opinion rejected the Eight Circuit's reasoning in Martin.  Specifically, the majority opined:

> We believe that the Eighth Circuit stretches the reasoning in *Mireles* too far, and confuses the question ... [of] whether the challenged conduct was specifically ordered by the judge with the separate question of whether the conduct was lawful or exceeded the actor's authority.

Id. at 436.  The majority emphasized the Mireles opinion only addressed the judge's order of removal and held that "when the challenged conduct is the judge's own decision making, the applicability of absolute immunity cannot turn on the correctness of the judge's decision."  Id.  In contrast, the conduct at issue in Martin and in Richman was not the judge's order but the manner in which the order was enforced.  In reasoning that the extension of quasi-judicial immunity was not appropriate in this type of case, the majority explained:

> The claim for damages in this case is not therefore a collateral attack on the judge's order (an order that Richman concedes was valid), and an appeal of the judge's order would provide no remedy. Similarly, the deputies are not being called upon to answer for wrongdoing directed by the judge, but instead for their own conduct. And that conduct-the manner in which they enforced the

judge's order-implicates an executive, not judicial, function.

Id. at 437-38.  The majority also dismissed the Eighth Circuit's policy reasons for extending judicial immunity when excessive force is used in removing a litigant from a courtroom.  In particular, the majority noted:

> the need for immediate action in the face of potentially fatal consequences is not a situation unique to courtrooms, and yet qualified immunity (which takes into account the particular circumstances faced by the officers) is the rule for law enforcement officers of all kinds, including secret service officers charged with guarding the president.

Id. at 438 (citations omitted).

Finally, the majority emphasized that the only difference between the application of qualified immunity and absolute quasi-judicial immunity is that the latter "shields even knowingly unlawful or plainly incompetent acts."  Id.  The majority reasoned that the trade off of allowing officers who acted reasonably to avoid litigation altogether while depriving victims of knowingly unlawful acts of any remedy was inappropriate and would not serve to protect the judicial function.  Id.  The majority concluded:

> It is not necessary to the judicial function, in our judgment, to also deny a remedy to plaintiffs who were harmed not by the judge's order, but by unlawful conduct by those who enforce it.

Id. at 439.

In contrast, the dissenting opinion found that absolute

quasi-judicial immunity was proper to shield the deputies from liability in <u>Richman</u>.  The dissenting opinion relied on the majority's reasoning in <u>Martin</u> and reasoned that the officers acted under the immediate direction and supervision of the judge who ordered the removal.  The dissent reasoned that this differs from other circumstances, such as when officers execute a warrant and are not under the direct supervision of a judge.  Therefore, the dissent opined that the officers here should be entitled to judicial immunity when removing a litigant from a courtroom, even if excess force and fatality result.  <u>Id.</u> at 443.

The dissent quoted heavily from the majority opinion in <u>Martin</u> to support its analysis.  The dissent concluded by reasoning that judges are competent enough to be entrusted with supervising officers who carry out their orders in the courtroom to make certain excessive force is not used and that a private right of action against the individual officers is illogical and unnecessary.  <u>Id.</u> at 444.  Otherwise, a probable outcome "would be to suggest that the judge, cloaked with his or her immunity, step down and preserve order himself."  <u>Id.</u>

After reviewing the case law at issue, this court is persuaded by the reasoning of the Seventh Circuit majority opinion in <u>Richman</u> and the dissenting opinion in <u>Martin</u>.

First, this court is cognizant of the presumption in favor of applying qualified immunity in analyzing official actions

rather than extend the shield of absolute immunity.  The Supreme Court has consistently "emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.  The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties.  [The Court] ha[s] been quite sparing in [its] recognition of absolute immunity, and ha[s] refused to extend it any further than its justification would warrant."  Burns v. Reed, 500 U.S. 478, 486-487 (1991) (internal quotation marks and citations omitted).

Next, when reviewing the Mireles decision, the Supreme Court made a distinction between immunity provided to the judge who issued the removal order and an officer who enforced the order.  The Supreme Court's holding in Mireles was limited to the judge who ordered the public defender be brought before the court.  The Supreme Court did not address whether quasi-judicial immunity should extend to the officers enforcing the order.

In particular, the Supreme Court analogized the situation to a judge issuing a warrant and the subsequent execution of the warrant by reasoning a "judge's direction to an executive officer to bring counsel before the court is no more executive in character than a judge's issuance of a warrant for an executive officer to search a home."  Mireles, 502 U.S. at 13.  The Supreme

Court, in analyzing the situation in <u>Mireles</u>, made a distinction between the judicial function in issuing the removal order and the executive function in enforcing the order.

Finally, the facts of <u>Mireles</u> are distinct from the case at bar and the facts present in <u>Martin</u> and <u>Richman</u>.  In <u>Mireles</u>, the majority assumed the judge expressly ordered the officers to bring the public defender to the courtroom using excessive force. In this case, and in <u>Richman</u> and <u>Martin</u>, the judge did not order the officers to use excessive force in removing the litigants from the courtroom.

The court agrees with the dissenting opinion in <u>Martin</u> that the extension of quasi-judicial immunity to courtroom officers who remove a person from court using excessive force is based on a false premise.  Specifically, the argument for extending judicial immunity falsely assumes that the judge ordered the officers to carry out the removal with excessive force.  Here, there is no evidence that Judge Golden ordered the officer to remove the Plaintiff with excessive force, and to assume that such an authorization is inherent in a judge's removal order defies reason and would condone the exercise of unconstitutional conduct.  Instead, the court agrees with the majority opinion in <u>Richman</u> that "an order to take someone into custody carries with it an implicit order not to use unreasonable force."  <u>Richman</u>, 270 F.3d at 435.

21

The court also finds the policy reasons supporting the extension of judicial immunity to the instant matter unpersuasive.  While courtroom order is important and providing security to judges, litigants and courtroom personnel is imperative, the dangers present are not unique to the courtroom environment and are present in numerous circumstances faced by law enforcement every day.  The Supreme Court has consistently held that qualified immunity is sufficient to protect government officers from unnecessary litigation and preserve the exercise of their official duties.  Hunter v. Bryant, 502 U.S. 224 (1991)(applying qualified immunity to Secret Service agents protecting the president); Anderson v. Creighton, 483 U.S. 635 (1987)(applying qualified immunity to an FBI agent who conducted a warrantless search of a home in pursuit of a suspect in a bank robbery committed earlier that day); Mitchell v. Forsyth, 472 U.S. 511 (1985)(applying qualified immunity analysis to Attorney General who authorized a warrantless wiretap for purposes of gathering information pertinent to national security).  The court sees no reason to shift this well established policy in the courtroom setting.

Further, the court is mindful that the only difference between absolute immunity in this case and qualified immunity is that the former forecloses any right of redress by a victim of unconstitutional conduct while the later allows a court to

22

analyze the specific facts and circumstances of the officer's conduct.  The court is persuaded that qualified immunity is the more appropriate vehicle in this circumstance.

In particular, the court agrees with the majority opinion in Richman that the Plaintiff's claim is not challenging the validity of the judge's order of removal and cannot be seen as a collateral attack on the judge's decision making.  Nor does Plaintiff challenge the deputy's authority to remove her pursuant to the judge's order.  Rather, Sergeant Taylor is being called upon to answer for his own wrongdoing, specifically the manner in which he enforced Judge Golden's order.  This implicates an executive and not a judicial function, and therefore, qualified immunity is appropriate.

For the reasons discussed above, this court will follow the 7th Circuit's decision in Richman and decline to extend absolute quasi-judicial immunity to Sergeant Taylor.

### 2. Qualified Immunity

As an "accommodation of competing values," qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where a governmental defendant was "plainly incompetent or . . . knowingly violate[d] the law," while immunizing a state officer who "made a reasonable mistake about the legal constraints on his actions."  Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) (internal quotations and

23

citations omitted).

A defendant's entitlement to qualified immunity hinges on two considerations.[2]  First, a court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all," Pearson v. Callahan, 555 U.S. 223, 232 (2009)(citation omitted), which, as the Court of Appeals has emphasized, is not a question of immunity as such, "but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity." Curley, 499 F.3d at 207.  A court must then decide "whether the right that was [allegedly] violated was clearly established, or, in other words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. (internal quotations and citations omitted).  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (citation omitted).

---

[2] While under Saucier v. Katz, 533 U.S. 194 (2001), overruled in part by Pearson, 129 S.Ct. at 818, the qualified immunity standard followed a "rigid order of battle," Pearson, 129 S.Ct. at 817 (citation omitted), in which the question of whether a right was clearly established was assessed only if the plaintiff had adequately alleged a violation in the first place, the Supreme Court adopted a more flexible approach in Pearson. As the Court explained, "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking will best facilitate the fair and efficient disposition of each case." Pearson, 129 S.Ct. at 821.

### a.   **Deprivation of a Constitutional Right**

The threshold question for a qualified immunity analysis is whether a reasonable fact-finder could conclude that the defendant deprived the plaintiff of a constitutional right.  One of the protections afforded by the Fourth Amendment is the right to be free from the use of excessive force by a law enforcement officer.  Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). In deciding whether the conduct at issue rises to the level of "excessive," a court must use an objective reasonableness standard rather than the "20/20 vision of hindsight," recognizing that police officers are often faced with split-second decisions in "tense, uncertain, and rapidly evolving" situations.  Graham, 490 U.S. at 396-97.  As the Supreme Court has explained, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  Id. at 396 (internal quotations and citations omitted).  Factors a court may consider include:

(1)   the severity of the instant crime;
(2)   the threat of immediate harm to the officers or others;
(3)   whether the suspect is attempting to flee or is actively resisting arrest;
(4)   the duration of the officer's action;
(5)   whether the action takes place in the context of effecting an arrest;
(6)   the possibility that the suspect may be armed;
(7)   the number of persons with whom the police officer must contend at one time.

Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir. 2006).

In this case, the Plaintiff has clearly alleged a violation of her constitutional right to be free from excessive force in the course of an otherwise lawful seizure.  The Plaintiff alleges that Sergeant Taylor forcibly picked her up off of the ground and a carried her out of the courtroom despite her pleas to walk out on her own.  There is no allegation that the Plaintiff resisted the judge's order that she be removed from the courtroom or that she was uncooperative in any way.  Further, the Plaintiff was a witness who was there to testify as a victim of a crime.  There is no evidence that the Plaintiff, a seventy-four year old woman, was behaving in a violent manner, had a known criminal history to warrant aggressive treatment or was exhibiting any signs of threatening behavior.  Further, Sergeant Taylor's action in forcibly removing the Plaintiff from the courtroom did not take place during a struggle or a "tense, uncertain, and rapidly evolving" situation.  Graham, 490 U.S. at 396-97.

Therefore, taking all Plaintiff's factual allegations as true as required on a motion to dismiss, the Plaintiff has alleged a violation of her constitutional right to be free from excessive force.

### b.   **Clearly Established Right**

Because the Plaintiff has alleged that Sergeant Taylor's conduct deprived the Plaintiff of her Fourth Amendment right to be free from excessive force, the Court must now determine

whether the alleged deprivation violated clearly established law.
See Safford Unified Sch. Dist. #1 v. Redding, 557 U.S. 364, 366
(2009) (granting qualified immunity to school officials where a
strip search of a student was unconstitutional but governing law
at the time of the incident was not sufficiently clear).

The Defendants argue that the law with regard to the removal
of someone from a courtroom is not clearly established as
evidenced by the Circuit split discussed infra.  The Defendants
argue that where is disagreement amongst the Circuits as to the
state of the law, the law is not clearly established and
qualified immunity is appropriate.  The Defendants cite to
Giuffre v. Bissell, 31 F.3d 1241, 1256 (3d Cir. 1994) in support
of their argument.

It is generally true that where the law is uncertain,
qualified immunity is to be recognized.  The Defendants confuse
which ambiguities in the law are relevant to the qualified
immunity analysis.  The Circuit split discussed infra addresses
whether absolute quasi-judicial immunity or qualified immunity is
the appropriate analysis for an excessive force claim brought
against an officer that removed a litigant from a courtroom
pursuant to a judge's directive.  These cases did not address the
underlying constitutional violation - the use of a excessive
force - committed by the officers.  It is the law surrounding the
constitutional right at issue, not the law surrounding the

27

immunity analysis, that must be clearly established.

Indeed, the case cited by the Defendants clearly states:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Giuffre, 31 F.3d at 1255 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Therefore, the issue before the court is whether the law surrounding excessive force was clearly established at the time of the alleged violation, not whether the law surrounding governmental immunity in this circumstance was clearly established.

A right is clearly established when "it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Lamont v. New Jersey, 637 F.3d 177, 182 (3d Cir. 2011). It is clearly established that the "[u]se of excessive force by a state official effectuating a search or seizure violates the Fourth Amendment." Estate of Smith v. Marasco, 430 F.3d 140, 148 (3d Cir. 2007). Moreover, while the law surrounding excessive force is fact-dependent, this does not mean the law is not clearly established. Tofano v. Reidel, 61 F. Supp. 2d 289, 299 (D.N.J. 1999). At the time of this incident, it was clearly established law in the Third

Circuit that the objective reasonableness standard articulated in Graham v. Connor, infra, and reiterated in Couden v. Duffy, infra, applied to alleged excessive force violations of the Fourth Amendment.  Id.

While there was no case law in this circuit addressing the reasonableness of force used when removing a litigant from a courtroom pursuant to a judge's directive, it would have been clear to a reasonable officer in Sergeant Taylor's position that forcibly lifting a non-resisting senior citizen and carrying her out of the courtroom was excessive.

Therefore, from the facts alleged in the Plaintiff's complaint, Sergeant Taylor is not entitled to qualified immunity on the allegation that he used constitutionally excessive force in executing the judge's directive.  Accordingly, the Defendants' motion to dismiss the claims against Sergeant Taylor will be denied.

**C.   Plaintiff's claims for negligence as well as assault and battery will be dismissed without prejudice**

Tort claims against public entities and public employees are governed by the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:1-1 et seq.  See Velez v. City of Jersey City, 180 N.J. 284 (2004); Longo v. Santoro, 195 N.J. Super. 507, 514 (App. Div. 1984); Badalamente v. Monmouth County Prosecutor's Office, No. 08-2501, 2011 U.S. Dist. LEXIS 53457, *25 (D.N.J. May 17, 2011). The NJTCA requires that a notice of claim must be filed with the

public entity not later than the ninetieth (90th) day after accrual of the underlying cause of action.  N.J. Stat. Ann. § 59:8-8(a).  Failure to file the required notice will result in the dismissal of the Plaintiff's tort claims. N.J. Stat. Ann. § 59:8-3 ("No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter.").

It is undisputed that the Defendants are public entities and employees and therefore, the notice provisions of the NJTCA apply to Plaintiff's tort claims.  The Plaintiff's complaint does not allege that she filed notice in accordance with the statute. Therefore, the Plaintiff's complaint fails to state a claim for negligence and assault and battery and must be dismissed.

The Defendants argue that this dismissal should be with prejudice because in her opposition, the Plaintiff admitted that she did not file a notice of claim pursuant to the NJTCA. Instead, the Plaintiff maintains that she filed a civil complaint with the police department and several Open Public Records Act requests.  The Defendant, in its reply, maintains these actions are insufficient to constitute sufficient compliance with the NJTCA notice requirements and therefore any amendment would be futile.

No motion to amend has been filed, and the Plaintiff has not

Case 1:11-cv-02710-JBS-AMD   Document 18   Filed 03/13/12   Page 31 of 34 PageID: 241

had an opportunity to respond to the arguments in the Defendant's reply brief that her proposed amendment would be futile. Consequently, as the court does not have the benefit of full briefing on the issue, the court will decline to decide whether Plaintiff's proposed amendment would satisfy the notice requirements of the NJTCA and state a valid claim.

The court will therefore dismiss the Count III (Negligence) and Count IV (assault and battery) without prejudice. The Plaintiff will be permitted leave to file a motion to amend the complaint and the parties will be able to fully brief the issue of NJTCA notice at that time.[3]

### D. Plaintiff's claims against the Township of Deptford and the Deptford Police will be dismissed without prejudice

For municipal liability to attach under Section 1983, a plaintiff must allege the municipality: (1) established a policy or custom that deprived Plaintiff of his constitutional rights; (2) acted deliberately and was the moving force behind the deprivation; and (3) his injury was caused by the identified policy or custom. Bd. of the County Comm'rs of Bryan County v.

_____

[3] Likewise, because the tort claims arising under the NJTCA are being dismissed for lack of notice, the Court will not determine whether Sergeant Taylor is entitled to qualified immunity for the alleged assault and battery. One could plausibly argue that the deputy's initial touching of Plaintiff was privileged because it was pursuant to the judge's directive; if so, Taylor would be immune from liability for the initial touching and removal, if not for the allegedly excessive force in doing so.

<u>Brown</u>, 520 U.S. 397, 403-04 (1997) (citing <u>Monell</u>, 436 U.S. at 690-91, 694).  A plaintiff can establish causation by "demonstrating that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."  <u>Id.</u> at 407.

In this case, the Plaintiff's complaint fails to allege the existence of a policy or custom that deprived the Plaintiff of her constitutional right to be free from excessive force.  The Plaintiff has also not alleged that the Defendant Township of Deptford or the Deptford Township Police department acted with deliberate indifference to any purported policy or custom.  Therefore, the Plaintiff's complaint fails to state a claim against the Township of Deptford and the Deptford Township Police.

However, it may be possible that an amended pleading could cure the above deficiencies if the Plaintiff pled sufficient grounds to establish a policy or custom.  Accordingly, as to the claims against the Township of Deptford and the Deptford Township Police, the dismissal will be without prejudice to the Plaintiff moving to amend her complaint to correct the above deficiency.  <u>See</u> <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004) ("We have held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be

inequitable or futile.").

**E.  Plaintiff's claims against John Does 1-50 are dismissed
    with prejudice**

The Plaintiff concedes that her claims against the
fictitious John Does 1-50 should be dismissed as the complaint
fails to set forth facts asserting that any other Deptford
Township employees were involved in the removal of the Plaintiff
from the Deptford Municipal Court aside from Sergeant Taylor and
Judge Golden.  The Plaintiff does not oppose the dismissal of the
fictitious John Does as the Defendants have admitted that
Sergeant Taylor was the officer who removed the Plaintiff from
the courtroom.

Therefore, all claims against fictitious John Doe Defendants
1-50 will be dismissed.

**IV.  CONCLUSION**

For the reasons discussed above, the court will grant in
part and deny in part Defendants' motion to dismiss.  The court
finds that Defendant Sergeant Michael Taylor is not entitled to
absolute quasi-judicial immunity and taking the facts in the
complaint as true, Defendant Sergeant Michael Taylor is also not
entitled to qualified immunity.  Therefore, the Plaintiff's
claims against Defendant Sergeant Taylor will not be dismissed
and this aspect of the Defendants' motion is denied.

The court finds that Counts III (negligence) and IV (assault
and battery) should be dismissed without prejudice as the

Plaintiff has failed to allege compliance with the New Jersey Tort Claims Act notice requirement.  In addition, Defendants Township of Deptford and Deptford Township Police will be dismissed as defendants since the Plaintiff has failed to allege the existence of an established policy or custom.

The dismissal of Count III, Count IV and Defendants Township of Deptford and Deptford Township Police is without prejudice to the Plaintiff filing a motion seeking to amend to correct these deficiencies within thirty (30) days of the entry of this order.

The accompanying Order will be entered.


**March 13, 2012**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      Chief U.S. District Judge

34