IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DOLORES INGRAM, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 11-2710 (JBS/AMD) |
| v. | : | |
| TOWNSHIP OF DEPTFORD, et al., | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Aaron Benjamin Gorodetzer, Esq.
BROWN - THE LAW FIRM
16 West Market Street
West Chester PA 19382
        Attorney for Plaintiff

A. Michael Barker, Esq.
BARKER, SCOTT & GELFAND
Linwood Greene
210 New Road, Suite 12
Linwood, NJ 08221
        -and-
Douglas M. Long, Esq.
LONG MARMERO & ASSOCIATES LLP
44 Euclid St
Woodbury, NJ 08096
        Attorneys for Defendants

**SIMANDLE**, Chief Judge:

I. **INTRODUCTION**

     This matter is before the Court on Plaintiff Dolores
Ingram's motion seeking leave to amend her complaint pursuant
Fed. R. Civ. P. 15. [Docket Item 23.] Plaintiff's proposed
Amended Complaint newly alleges that Defendants Township of

Deptford and Deptford Township Police engaged in a pattern or practice of allowing its police officers to act recklessly and to use excess force that result in injuries to individual citizens. [Am. Compl. ¶¶ 19, 26.] The Amended Complaint also alleges that Plaintiff "substantially complied" with the notice requirements of the New Jersey Tort Claims Act ("NJTCA"). [Am. Compl. ¶¶ 32, 38.] Defendants Township of Deptford and Defendant Sgt. Michael Taylor oppose the motion. For the reasons discussed herein, the Court will deny Plaintiff's motion to amend.

## II.   BACKGROUND

The instant action arises out of Defendant Sgt. Michael Taylor's alleged use of excessive force on the Plaintiff in removing her from a municipal court proceeding pursuant to the order a municipal court judge, allegedly causing physical and emotional injuries to the Plaintiff. The facts of this case were described fully in the Court's previous opinion, Ingram v. Twp. of Deptford, No. 11-2710, 2012 WL 868934, at *1-*2 (D.N.J. March 13, 2012), and are incorporated herein.

Plaintiff asserts that on the day of the incident, May 13, 2009, she filled out a Deptford Township Municipal Court form with the title, "Probable cause statement for issuance of motor vehicle or criminal complaints" (hereinafter "probable cause statement"), in order to register her complaint against Sgt.

2

Taylor.[1] [Pl. Br. Exh. B at Exh. A, Exh. C at 48:15-49:2.] The
form includes Plaintiff's name, address and signature, and lists
the "Defendant" as "Sargent Michael Taylor" and the "Statute
Number or Offense(s) to be issued" as "Excessive force, degrating
me to the point that I was crying histerically & humilating me in
front of the courtroom." [Pl. Br. Exh. B at Exh. A.] On the last
of four blank lines provided to describe the "Reason for issuing
this complaint (Briefly describe the incident)" are numbers
apparently referencing parts of the New Jersey Code of Criminal
Justice: "2C, 33-4 2C, 12-1-A-1."[2] On the back of the form,
Plaintiff explains the incident in more detail: "Officer Sgt.
Taylor grabbed me by the arm, placing his hand on the center of
my back, forced me, lifting me off the ground, while in the
courtroom, causing pain to my previously injured neck and back .
. . ." Plaintiff alleges that Sgt. Taylor "threatened to put me

---

[1] Plaintiff declares that the "manager of the office"
physically filled out the form because Plaintiff "was in no
condition to write." [Pl. Br. Exh. C at 49:8-12.]
    Additionally, there is confusion about the dates on the
form, which lists "Today's Date" as "8/24/09," but Plaintiff
asserts the form was filled out on May 13, 2009. [Pl. Br. at 4-5;
Pl. Br. Exh. B at Exh. A.] Furthermore, the "Date and Time of
Offense" is listed as "5/14/09 - approx 8:45 AM," but, again,
Plaintiff asserts that the date of the incident was May 13, 2009.
Plaintiff provides no explanation for the incorrect dates, other
than to say that she did not fill out the form herself and did
not notice the error when she signed the paper. [Pl. Br. Exh. C
at 52:4-54:17.]

[2] The Court interprets these numbers to reference N.J. Stat.
Ann. § 2C:33-4 ("Harassment," a "petty disorderly persons
offense") and N.J. Stat. Ann. § 2C:12-1(a)(1) ("Simple assault").

3

in jail" and, when Plaintiff asked "Do you realize I can charge you with excessive force?", Sgt. Taylor responded, "I don't care." Plaintiff asserts: "I was afraid I was going to have a stroke." [Pl. Br. Exh. B at Exh. A.]

Nearly two years later, Plaintiff filed the instant action against Defendants Township of Deptford, Deptford Township Police, Sgt. Michael Taylor and John Does 1-50. [Docket Item 1.] Plaintiff claimed four causes of action: (1) violations of her Fourth and Fourteenth Amendment rights under the U.S. Constitution, caused by Defendants' use of unnecessary and grossly excessive force, (2) violations of the New Jersey State Constitution, stemming from the same activity, (3) tort claims for negligence, and (4) assault and battery.

Upon Defendants' motion, the Court dismissed without prejudice all claims against Defendants Township of Deptford and Deptford Township Police brought under 42 U.S.C. § 1983, because Plaintiff failed to allege the existence of a policy or custom that deprived Plaintiff of her constitutional right to be free from excessive force, and because Plaintiff failed to allege that the Township or the police department acted with deliberate indifference to any purported policy or custom. Ingram, 2012 WL 868934, at *13. The Court also dismissed without prejudice the negligence and assault and battery claims, because the issue of whether Plaintiff complied with the notice provisions of the

4

NJTCA was not fully briefed, and the Court dismissed all claims against John Doe defendants with prejudice. Id. at *12-*13. The only surviving claims were those against Sgt. Taylor. Id. at *14.

Plaintiff filed a motion for leave to amend her complaint. [Docket Item 23.] After filing and after conducting discovery, Plaintiff's counsel, in a letter dated August 21, 2012, advised the Court that Plaintiff was discontinuing voluntarily all claims under § 1983 ("Monell claims") as well as claims against John Doe defendants. [Docket Item 27.] Thus, the only issue presently before the Court is whether Plaintiff should be allowed to amend her claims against the Township, the Township Police, and Sgt. Taylor under the New Jersey State Constitution or state tort law.

When disregarding the claims brought under § 1983 and those against John Doe defendants, there are only two significant differences between the proposed Amended Complaint and the Complaint as originally filed.

First, in the "Second Count" of the Amended Complaint, Plaintiff pleads that the Township of Deptford and the Township Police "engaged in a pattern or practice of allowing its police officers, including Defendant Sgt. Michael Taylor to engage in reckless behavior and utilizing excess force causing injuries to individual citizens and implemented adopted [sic] these unlawful policies and customs." [Am. Compl. ¶ 26.] Plaintiff cites "Case of Joseph Rao (Deptford Police Brutality) and Case of Sarah

Weingartner (Personal Injuries caused reckless by Sgt Michael Taylor)" without further explanation. Id.

Second, Plaintiff adds substantially similar paragraphs to both "Third Count" and "Fourth Count," expressly pleading that plaintiff "substantially complied with the New Jersey Tort Claims Act" by filing "a complaint for excessive force with the Deptford Township Police against Michael Taylor on May 13, 2009 the date of the incident (incorrectly noted as May 14, 2009 and incorrectly dated August 24, 2009)." [Am. Compl. ¶¶ 32, 38.] In ¶ 32, Plaintiff adds that "[a] true and correct copy of this Notice is attached hereto as Exhibit A." In ¶ 38, under "Fourth Count," Plaintiff adds an additional sentence: "Plaintiff also filed several OPRA [Open Public Records Act] requests within 90 days on the Deptford Township Police which went largely ignored and without any further follow up or inquiry from the Deptford Township Police." There is no further mention of the OPRA requests, nor a description of their contents, in Plaintiff's submissions to the Court.

Attached to the Amended Complaint, as Exhibit A, is a copy of the Deptford Township Municipal Court probable cause statement.

## III.  DISCUSSION

Under Fed. R. Civ. P. 15(a)(2), a party may amend its pleading with the court's leave, and "[t]he court should freely

6

give leave when justice so requires." However, the Third Circuit has recognized that a district court justifiably may deny leave to amend "on grounds such as undue delay, bad faith, dilatory motive, and prejudice, as well as on the ground that an amendment would be futile." Smith v. Nat'l Collegiate Athletic Ass'n, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999). An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted. Id.; see also Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000).

The Court will consider both of Plaintiff's claims in turn: her amended tort New Jersey claims and her amended New Jersey State Constitution claims.

### A. Tort Claims under the New Jersey Tort Claims Act (NJTCA)

The key question for the Court is whether the probable cause statement provided adequate notice to the Township and Township Police of Plaintiff's tort claims, under the NJTCA. If the filing is insufficient for the purposes of the NJTCA, then the motion to amend Plaintiff's tort claims must be denied, because the amended tort claims would not survive a motion to dismiss for failure to comply with the NJTCA notice requirements.

Plaintiff seems to assume that the probable cause statement "substantially complies" with the requirements of the NJTCA, and sees the central dispute as whether the filing was timely. [Pl.

Br at 4-5.] Other than to state the conclusion that her filing complied with the NJTCA, Plaintiff does not present support for the proposition that filing a probable cause statement with the Municipal Court[3] on a criminal/traffic complaint form gives sufficient notice of her claims for money damages to the Township or the Township Police for purposes of the statute. Nor does Plaintiff argue in her brief that OPRA requests satisfy the notice requirement. Instead, Plaintiff focuses her argument on the timing of the filing and asserts that "a question of fact exists with respect to the timing of the notice . . . " and therefore the Court should grant the motion to amend. [Pl. Br. at 5.]

However, as Defendants point out, the question of timing is irrelevant if the filing with the Municipal Court is inadequate notice to the Township or the Township Police as a matter of law. Timely filing cannot save an otherwise deficient notice. Defendants argue that amendment in this case would be futile, because Plaintiff did not give notice to the proper public entity under the NJTCA, and, in the alternative, if she did, the probable cause statement was insufficient notice of tort claims under the statute. [Def. Opp'n at 2-6.]

Therefore, the Court first must decide whether, under

_____

[3] There is some confusion about whether the statement was filed with the Municipal Court or the Township Police. See discussion infra note 4.

8

applicable New Jersey law, the filing of the probable cause statement gives actual or constructive notice to either or both the Township of Deptford and the Deptford Township Police, for purposes of the NJTCA.

**i. New Jersey Tort Claims Act notice requirement**

The NJTCA sets forth the procedures a claimant must follow before bringing a tort claim against the state, or, as is relevant here, a "local public entity." N.J. Stat. Ann. § 59:1-1 et seq. The statute defines a "local public entity" as "a public entity other than the State." § 59:8-2. The claim must include seven items: (1) name and address of the claimant, (2) the address to which the notice will be sent, (3) the "date, place and other circumstances of the occurrence or transaction" giving rise to the claim, (4) a description of the injury, damage or loss incurred, (5) the name or names of the public entity, employee or employees causing the injury, (6) the amount of damages claimed, and (7) the signature of the claimant. §§ 59:8-4, 59:8-5.

A claim for injury or damages against a local public entity "shall be filed with that entity" within 90 days after the accrual of the cause of action. §§ 59:8-7, 59:8-8. A claim "may be presented to a local entity by delivering it or mailing it certified mail to the entity" and the claim "shall be deemed to have been presented in compliance with this section . . . if it

9

is actually received at . . . [a] local public entity within the time prescribed . . . ." § 59:8-10(a)-(b). "[C]onstructive service" of the public entity can be achieved by serving the required notice "upon any employee of that entity." § 59:8-10(c). Although the statute sets a 90-day time limit to file the claim, a claimant may file the notice within two years, with permission of the court and if late notice will not prejudice the defendant, upon a showing of "extraordinary circumstances for [her] failure to file notice of claim" within the 90-day period. § 59:8-9.

**ii. Discussion of the New Jersey Tort Claims Act notice requirement**

Because more than two years have elapsed since the accrual of her claim, Plaintiff argues that she "substantially complied" with the statute "by filing a complaint for excessive force with the Deptford Township Municipal Court claims [sic] against Michael Taylor on May 13, 2009 . . . ." [Pl. Br. at 4.] Plaintiff argues that because a question of fact exists about the timing of the filing, the motion to amend should be granted. [Id. at 5.] Plaintiff cites four cases in which New Jersey state courts or the District of New Jersey found claimants in substantial compliance with the NJTCA. [Id. at 3-4.]

Defendants respond that filing a probable cause statement with the Municipal Court does not meet the statutory requirement of filing notice with the particular public entity being sued.

10

[Def. Opp'n at 3-5.] For support, Defendants cite <u>Forcella v.</u>
<u>City of Ocean City</u>, 70 F. Supp. 2d 512 (D.N.J. 1999). There, the
court found that proper service of the claim on the city and the
Department of Public Safety did not comply with the NJTCA notice
requirement as to defendant Ocean City Police Department.
<u>Forcella</u>, 70 F. Supp. 2d at 513-14. The Police Department was a
"public entity" distinct from the Department of Public Safety and
from the city itself, and thus, under the NJTCA, the plaintiff
needed to file notice of the claim with the Police Department
separately. <u>Id.</u> at 519. Defendants suggest that if Plaintiff
filed her claim with the Municipal Court, her filing was not
sufficient to give notice to the Township or the Township Police,
which are separate, local public entities.

In the alternative, Defendants argue that even if the
Municipal Court was the correct entity to serve, the probable
cause statement does not sufficiently comply with the NJTCA
because "Plaintiff failed to file a notice of tort claim with
Deptford Township or the Deptford Township Police Department."
[Def. Opp'n at 5-6.]

The Court is persuaded by the plain text of the statute, the
language of the probable cause statement, and the reasoning in
<u>Forcella</u> that the Plaintiff provided insufficient notice of tort
claims to the Township and the Township Police under the NJTCA.
Therefore, Plaintiff's motion to amend her tort claims must be

denied, on the grounds that amendment would be futile.

On its face, the statute requires filing a claim "with that entity" and Plaintiff here does not argue that she filed any notice of tort claims directly with the Township or the Township Police.[4] The only piece of paper she submitted to any local entity within the permitted time frame was a statement of probable cause "for issuance of motor vehicle or criminal

---

[4] Plaintiff is inconsistent on the question of where the probable cause statement was filed. In her brief, Plaintiff exclusively argues that she filed the form with the Municipal Court. She states that she complied with the NJTCA "by filing a complaint for excessive force with the Deptford Township Municipal Court . . . ." [Pl. Br. at 4.] Later, Plaintiff states that she "reported to the Deptford Township Municipal Court to lodge a Complaint against Defendant Michael Taylor." [Id.] The probable cause statement itself appears to be on Municipal Court stationery, with the name, address and telephone number of the court, as well as the names of a Municipal Court judge and a certified court administrator, across the top of the form. [Pl. Br. Exh. B at Exh. A.] Plaintiff's Amended Complaint, however, states that Plaintiff substantially complied with the NJTCA "by filing a complaint for excessive force with the Deptford Township Police against Michael Taylor . . . ." [Am. Compl. ¶¶ 32, 38.]

The Court does not consider this detail to be outcome determinative. Whether Plaintiff filed the form in the Municipal Court or in the Police Department is not material, because it is the nature of what she filed, rather than the place of filing, that dooms Plaintiff's NJTCA claims herein. If she had actually filed a compliant NJTCA administrative claim, and if she presented it either to a Deptford Township Municipal Court employee or to an employee of the Deptford Township Police Department, that may have sufficed to join at least one of the municipal entities. One must assume that a clerk in the Deptford Township Municipal Court is an employee of Deptford Township, and that presenting a proper NJTCA notice to that employee suffices to give notice to the Township pursuant to N.J. Stat. Ann. § 59:8-10(c), supra (service "upon any employee of that entity" suffices to serve the entity). Likewise, service upon an employee of the Police Department would suffice to serve the Police Department under § 59:8-10(c).

complaints" – not civil tort claims seeking money damages - which cited two offenses of the New Jersey Code of Criminal Justice and which did not list the Township or the Township Police as potential defendants.[5] [Pl. Br. at 4.] Furthermore, the fact that the probable cause statement contained neither an amount of damages claimed, as required by § 59:8-4(f), nor any language suggesting that Plaintiff sought civil damages for her injuries, is an additional indication that the statement did not provide sufficient notice of tort claims to the Township or the Township Police. It is difficult to interpret this form as anything other than what it plainly purports to be: a statement in support of possible criminal charges against Sgt. Taylor. The filing of this criminal complaint form in municipal court does not constitute substantial compliance with the notice requirements of the NJTCA.

This type of defect in the form of notice was also held to be fatal in the NJTCA claim in <u>Platt v. Gonzalez</u>, No. 09-6136, 2011 U.S. Dist. LEXIS 65115, at *11-*13 (D.N.J. June 9, 2011). In that case, the plaintiff argued that he substantially complied with the NJTCA by filing an "Internal Affairs Complaint" with the Atlantic City Police Department and two "Civilian Complaint Requests" with the Atlantic City Municipal Court, seeking to

---

[5] Plaintiff also pleads that she filed OPRA requests, but she does not plead facts that the OPRA requests were even related to this transaction or occurrence. Plaintiff does not mention the OPRA requests in her brief. Therefore, the OPRA requests will not be considered further.

charge police officers with aggravated assault and excessive force. Id. at *12-*13. The court held that the "equitable doctrine of substantial compliance" was intended "to prevent barring legitimate claims due to a technical defect in the notice of tort claim filed by plaintiff." Id. Failing to file a notice of tort claims with the police department altogether was not a technical flaw. Id. at *13. The Internal Affairs Complaint, undisputedly filed with the police department, "could not be considered a notice pursuant to the [NJ]TCA." Id.

The Court agrees that in this case, a statement made "for issuance of motor vehicle or criminal complaints," which references only two provisions of the New Jersey Code of Criminal Justice, and which neither names the Township nor the Township Police as defendants, nor provides an amount of civil damages claimed, does not "substantially comply" with the notice requirement under the NJTCA.

Plaintiff's citations are unavailing. In Vargas v. Camden City Bd. of Educ., No. 05-778, 2006 WL 840393, at *5-*6 (D.N.J. March 28, 2006), the Court held that the plaintiff substantially complied with the notice requirements, but there, the plaintiff sent a letter directly to the Board of Education and listed tort claims that the plaintiff intended to bring. Here, Plaintiff did not make a similar effort. Likewise, in D'Eustachio v. City of Beverly, 427 A.2d 126, 128 (N.J. Super. Ct. Law Div. 1979), the

14

court found substantial compliance with the statute, but there
the plaintiff wrote a detailed letter directly to the chief of
the fire department, which was the public entity defendant,
describing the property damage suffered. By contrast, here, no
letters were sent to the heads of the defendant entities and the
communication in this case appeared in the form of a probable
cause statement detailing possible criminal offenses, not a
dedicated correspondence to inform the defendant of possible tort
claims seeking monetary relief. In Guerrero v. City of Newark,
522 A.3d 1036, 1038-39 (N.J. Super. Ct. App. Div. 1987), the
court found substantial compliance with the statute, but there
the plaintiff's attorney mailed a letter to the defendant
specifically to inform him that the plaintiff intended to pursue
a claim under the NJTCA. Here, Plaintiff made no mention of the
statute, or of tort claims generally, or of the intent to seek
civil damages. Finally, in Dambro v. Union Cnty. Park Comm'n, 327
A.2d 466, 467 (N.J. Super. Ct. Law Div. 1974), the court found
substantial compliance with the statute, but there the
plaintiff's attorney sent letters to the borough police
department and the borough tax assessor, detailing the
statutorily required information and giving indication that
plaintiff sought civil damages for his injuries. Here, Plaintiff
did not send a separate notice or letter and did not indicate
that she intended to bring tort claims against the Defendants nor

15

that she sought money damages from any public entity.

By asking the Court to interpret a statement of probable cause of criminal offenses as a notice of tort claims, Plaintiff essentially asks the Court to eliminate the NJTCA notice requirement altogether. If filing a probable cause statement or lodging a criminal complaint gave public entities sufficient notice of tort claims, the NJTCA procedures would be rendered largely superfluous. For this reason, and those stated above, the Court denies Plaintiff's motion to amend her tort claims, on the grounds that amendment would be futile.

**B.  Claims under the New Jersey State Constitution**

Plaintiff seeks to amend her state law constitutional claims ("Second Count") against the Township and the Township Police. [Pl. Br. at 5.] To bolster the validity of her amended claims, Plaintiff asserts that this Court improperly dismissed the municipal defendants on these counts for two reasons. First, the NJTCA notice requirement is not applicable to Plaintiff's claims under the New Jersey Constitution. [Id.] See Baklayan v. Ortiz, No. 11-3943, 2012 WL 1150842, at*3 n.3 (D.N.J. Apr. 5, 2012) ("The procedural requirements of the New Jersey Tort Claims act '[do] not apply to federal or state constitutional claims . . . .'")(citations omitted). Second, Plaintiff argues that the New Jersey Constitution does not prohibit liability based on principles of respondeat superior, even though § 1983, on which

16

the state statute is based, bars such claims. [Id. at 6.] See
Perry v. Bruns, No. 11-2840, 2012 WL 395495, at *4 (D.N.J. Feb.
6, 2012) ("The New Jersey Constitution does not prohibit
liability based on principles of respondeat superior."), Gibson
v. Superintendent of N.J. Dep't of Law and Pub. Safety, No. 02-
5470, 2009 WL 900854, at *4 (D.N.J. Mar. 31, 2009) ("[A] claimed
violation of rights protected by the New Jersey Constitution may
be alleged in terms of respondeat superior liability, regardless
of the corollary prohibition on such a theory of liability in a
case claiming a violation of federal constitutional rights.").
Plaintiff concludes that she "should be entitled to pursue her
New Jersey State Law Constitutional claims under agency/vicarious
liability theories" against the municipal defendants. [Pl. Br. at
6.]

Defendants do not respond directly to these arguments.
Defendants assert that the claims under the New Jersey
Constitution against the John Doe defendants fail because
Plaintiff "failed to meet the Twombly/Iqbal pleading standard[,]"
but Defendants do not present any argument regarding the state
constitutional claims against the Township or the Township
Police. [Def. Opp'n at 7.]

As amended, Plaintiff's "Second Count" states that Sgt.
Taylor "violated the plaintiff's clearly established rights under
the Constitution of the State of New Jersey[,]" although the

Amended Complaint does not specify what provision of the state constitution was violated. [Am. Compl. ¶ 22.] Plaintiff seeks redress for those violations of the state constitution "pursuant to the New Jersey Civil Rights Act" ("NJCRA") but again eschews references to specific provisions. [Id. ¶ 23.] Plaintiff alleges that the Township and the Township Police engaged in a pattern or practice of allowing its police officers to behave recklessly and to use excessive force, citing "Case of Joseph Rao (Deptford Police Brutality) and Case of Sarah Weingartner (Personal Injuries caused reckless by Sgt Michael Taylor)." [Id. ¶ 26.] Plaintiff also alleges that the Township was "responsible for the aforesaid actions of the defendant, Sgt. Michael Taylor by principals [sic] of common law agency, the doctrine of respondeat superior and otherwise by applicable statute." [Id.  ¶ 27.] In preceding paragraphs of the Amended Complaint, incorporated into the "Second Count," Plaintiff asserts that the Township and the Township Police employ the police officers [id. ¶ 2], the Township Police Department was "responsible for the supervision and conduct" of Sgt. Taylor [id.], and that Sgt. Taylor was "acting within the scope and course of [his] agency . . . ." [Id. ¶ 4.]

### i. Respondeat superior liability under the New Jersey Constitution and the New Jersey Civil Rights Act

Insofar as the amended "Second Count" alleges "New Jersey

State Law Constitutional claims under agency/vicarious liability theories" brought "pursuant to the New Jersey Civil Rights Act" against the Township and the Township Police, the motion to amend will be denied.

Whether a municipality may be liable on a respondeat superior theory under the New Jersey Constitution and the NJCRA is less certain than Plaintiff suggests. Although Perry and Gibson indeed seem to permit respondeat superior claims to proceed under the New Jersey Constitution, other District of New Jersey opinions, including a more recent case, reject such claims. See Baklayan, 2012 WL 1150842, at *6 ("Both the NJCRA [New Jersey Civil Rights Act] and § 1983 premise liability on [for supervisory liability] on personal involvement in the alleged misconduct, and neither allow claims premised solely on respondeat superior."), Didiano v. Balicki, No. 10-4483, 2011 WL 1466131, at *6 (D.N.J. Apr. 18, 2011) (stating that "[c]ourts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983" and holding that neither § 1983 nor the NJCRA "provide a remedy for alleged constitutional violations committed by the State of New Jersey" because the state and a state prison are not "person[s]" within the meaning of the NJCRA). New Jersey courts do not offer clear guidance on this point. See, e.g., Massey v. City of Atlantic City, No. 3627-07, 2011 WL 1161000, at *6 (N.J. Super. Ct. App. Div. Mar. 31,

2011) (declining to "consider whether, under the NJCRA, the City may be held liable derivatively for the misdeeds of one of its employees. Cf. [Monell] . . . .").

When interpreting the New Jersey Constitution and New Jersey statutes, this Court must follow state court decisions on these matters. New Jersey courts "have consistently looked to federal § 1983 jurisprudence for guidance" and have "repeatedly interpreted NJCRA analogously to § 1983." Gonzalez v. Auto Mall 46, Inc., Nos. 2412-09 & 216-10, 2012 WL 2505733, at *4 (N.J. Super. Ct. App. Div. July 2, 2012) (citing, among other cases, Rezem Family Assocs., LP v. Borough of Millstone, 30 A.3d 1061 (N.J. Super. Ct. App. Div. 2011), cert. denied, 29 A.3d 739 (N.J. 2011)). The Court cannot find, nor has Plaintiff provided, any citations to any New Jersey court decisions that permit a finding of municipal liability based on respondeat superior for claims brought under the New Jersey Constitution and the NJCRA.[6] Therefore, because respondeat superior liability is not permitted under § 1983, and because New Jersey courts interpret the NJCRA as analogous to § 1983, the Court holds that respondeat superior liability is not permitted for claims under the New Jersey Constitution and the NJCRA. See, e.g., Collins v. City of Harker Heights, 503 U.S. 115, 122 (1992) (holding that a "city is not vicariously liable

---

[6] Neither Perry nor Gibson ultimately held defendants liable on a theory of respondeat superior. See Perry, 2012 WL 395495 at *4; Gibson, 2009 WL 900854, at *5.

under § 1983 for the constitutional torts of its agents"); <u>Monell v. Dep't of Social Svcs. of City of New York</u>, 436 U.S. 658, 663 n.7 (1978) (upholding <u>Monroe v. Pape</u>, "insofar as it holds the doctrine of <u>respondeat superior</u> is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees"); <u>C.P. v. Twp. Of Piscataway Bd. of Educ.</u>, 681 A.2d 105, 112 (N.J. Super. Ct. App. Div. 1996) ("a municipality will not be held liable for federal civil rights claims based solely on <u>respondeat superior</u>.").

<u>Gibson</u> was the first District of New Jersey case to suggest that the New Jersey Constitution does not prohibit liability based on principles of respondeat superior, but the Court does not find it persuasive here. The <u>Gibson</u> court did not squarely hold that state constitutional claims brought under the NJCRA should be subject to a different analysis than those brought under § 1983. The court stated that

> even if actions under the New Jersey Civil Rights Act were subject to the same limitations on vicarious liability as actions under § 1983, Plaintiff in this case may proceed in his claim against the [defendant] without relying on the New Jersey Civil Rights Act at all. . . . [T]he New Jersey Constitution itself provides a remedy for violations of its provisions.

<u>Gibson</u>, 2009 WL 900854, at *4 n.4. Here, Plaintiff expressly brings claims under the NJCRA, distinguishing this case from <u>Gibson</u>. <u>See</u> Am. Compl. ¶ 23. Additionally, the Court remains unpersuaded that the <u>Gibson</u> holding reflects the present approach

of New Jersey courts in interpreting the state laws and state constitution. The only New Jersey case that the Gibson court cited for support was Wright v. State of New Jersey, 778 A.2d 443, 450 (N.J. 2001). Gibson, 2009 WL 900854, at *5. Wright decided an issue expressly governed by the NJTCA, and, here, by contrast, the NJTCA is inapplicable to Plaintiff's constitutional claims. See Pl. Br. at *5 ("the Notice Provisions of the New Jersey Tort Claims act are not applicable to Plaintiff's claims under the New Jersey State Constitution."). See also Owens v. Feigin, 925 A.2d 106, 107 (N.J. Super. Ct. App. Div. 2007) (holding that the procedural requirements of the NJTCA do not apply to claims asserted under the New Jersey Constitution and the NJCRA); Baklayan, 2012 WL 1150842, at *3 n.3 (holding the NJTCA does not apply to state constitutional or statutory claims brought under the New Jersey Civil Rights Act) (citing Owens, supra, and Cnty. Concrete Corp. v. Roxbury, 442 F.3d 159, 174 (3d Cir. 2006)). Thus, the Court declines to extend Gibson's holding to permit respondeat superior municipal liability for claims brought under the New Jersey Constitution and the NJCRA.

The Perry court relied solely on Gibson to assert the viability of the respondeat superior theory for claims brought under the New Jersey Constitution. Perry, 2010 WL 395495, at *4. In Perry, however, the plaintiff failed to state a claim for respondeat superior because the alleged wrongful actions of the

22

defendant employees were taken outside the scope of their employment, barring supervisory liability. Id. The court conducted no further analysis.

Nothing in Perry or Gibson, therefore, persuades the Court that respondeat superior liability is properly pleaded in this case. The Court will deny Plaintiff's motion to amend the complaint to bring claims against the Township and the Township Police under the New Jersey Constitution and NJCRA based solely on supervisory, vicarious, or respondeat superior liability.

**ii. Unconstitutional pattern or practice under the New Jersey Constitution**

It is unclear from Plaintiff's counsel's letter whether Plaintiff is voluntarily withdrawing Monell-type claims under the New Jersey Constitution – that is, whether Plaintiff still wishes to pursue claims under the theory that the Township and Township Police engaged in a pattern of behavior permitting reckless conduct by police officers or permitting officers to use excessive force, in violation of the New Jersey Constitution.[7] [Docket Item 27.] Assuming Plaintiff still seeks to add this

---

[7] Plaintiff's counsel writes: "Discovery has been conducted and based on said discovery Plaintiff is voluntarily discontinuing any pursuit of any Monell claims. . . . Accordingly, the issues remaining with respect to Plaintiff's Motion to Amend Complaint are: Whether Plaintiff should be allowed to Amender [sic] her Complaint to have Claims against Sgt. Taylor and Deptford Township and/or the Deptford Township Police (a.) Under The New Jersey State Constitution or (b.) For State Tort Law Claims." [Docket Item 27.]

claim, and insofar as the amended "Second Count" alleges an unconstitutional pattern or practice of the Township or the Township Police, the Court will address the issue whether the proposed amendment to Count Two - to state a Monell-type claim under the New Jersey Constitution for a policy or custom of permitting officers including Sgt. Taylor to use excessive force - would be futile.

Count Two of the proposed Amended Complaint alleges, in ¶ 26, the following:

> The Defendants Township of Deptford, Deptford Township Police and/or John Does 1-25 engaged in a pattern or practice of allowing its police officers, including Defendant Sgt. Michael Taylor to engage in reckless behavior and utilizing excess force causing injuries to individual citizens and implemented adopted these unlawful policies and customs. See Case of Joseph Rao (Deptford Police Brutality) and Case of Sarah Weingartner (Personal Injuries caused Reckless by Sgt Michael Taylor).

Plaintiff does not provide any more detail about the two cases cited that purportedly support an illegal pattern or practice. "Case of Joseph Rao," appears to be an example of excessive force by Deptford Police, but Plaintiff does not allege that Sgt. Taylor was involved in that incident. The "Case of Sarah Weingartner" did involve Sgt. Taylor, but that case arose from Taylor's alleged recklessness, not his use of excessive force. See Weingartner v. Twp. of Deptford, No. L-534-06, 2007 WL 1574546 (N.J. Super. Ct. App. Div. June 1, 2007). In that case, according to the non-precedential opinion of the Appellate

Division, Weingartner was driving and stopped to make left turn when her vehicle was struck by Sgt. Taylor in his squad car. Id. at *1. Taylor was responding to an unrelated 911 call and traveling 25 miles-per-hour above the speed limit. Id. The "Case of Sarah Weingartner" arguably demonstrates Sgt. Taylor's recklessness in driving in response to an emergency dispatch but cannot be used to support a pattern or practice of the Deptford Police permitting the use of excessive force in the seizure or arrest of persons, which is the constitutional violation alleged in the present case.

Allowing "reckless" behavior does not offend the New Jersey Constitution since it is not an enshrinement of tort law and Plaintiff has identified no provision of the New Jersey Constitution that guarantees a right to be free from reckless acts by state or municipal employees. Cf. Felicioni v. Admin. Office of Courts, 961 A.2d 1207, 1213 (N.J. Super. Ct. App. Div. 2008) (stating that the constitutional guarantee of due process, found in the U.S. Constitution as well as the New Jersey Constitution, "does not protect individuals from all governmental actions that infringe liberty or injure property in violation of some law"); McDonough v. Jorda, 519 A.2d 874, 881 (N.J. Super. Ct. App. Div. 1986) ("an assertion of negligence existing through policies and customs on the part of municipal officials which may have led to an injury being inflicted by a municipal employee,

25

even though inflicted intentionally by that employee, does not establish a cognizable cause of action against the municipality under § 1983"). For similar decisions under the U.S. Constitution, see Fagan v. City of Vineland, 22 F.3d 1296, 1303, 1305 (3d Cir. 1994) (en banc) (holding that merely reckless conduct by the police is not actionable under the Due Process Clause); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("The guarantee of due process has never been understood to mean that the State must guarantee due care on the part of its officials."); Daniels v. Williams, 474 U.S. 327, 332 (1986) (noting that the U.S. Supreme Court has rejected the reasoning that "would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States") (quoting Paul v. Davis, 424 U.S. 693, 701 (1976)); Hudson v. Palmer, 468 U.S. 517, 533 (1984) ("The state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct."). Remedies for reckless acts are available in other provisions of state law, but have not been identified as being of constitutional dimension.[8]

---

[8] The standard for liability in a § 1983 case alleging a failure to properly supervise, according to the New Jersey Supreme Court, is one of "recklessness or deliberate indifference," but that refers to recklessness in failing to supervise, not the recklessness of the employee's actions. See Schneider, 749 A.2d at 355-56 ("a plaintiff must establish that . . . the failure to . . . supervise amounts to deliberate

Cf. Schneider v. Simonini, 749 A.2d 336, 355 (N.J. 2000)
(distinguishing "constitutional torts" from state statutory or
common law torts, in the context of Monell). Reckless acts do not
achieve a constitutional dimension simply because they are
committed by municipal or state employees. Cf. Hudson v.
McMillian, 503 U.S. 1, 9 (1992) (stating that not "every
malevolent touch by a prison guard gives rise to a federal cause
of action"); Davidson v. O'Lone, 752 F.2d 817, 827 (3d Cir.
1984) ("a tort committed by a state official acting under color
of state law is not, in and of itself, sufficient to show an
invasion of a person's constitutional rights under § 1983")
(citing Kent v. Prasse, 385 F.2d 406 (3d Cir. 1967)). Because a
Monell-type claim must allege unconstitutional conduct by a state
actor, and the prior reckless traffic accident involving Sgt.
Taylor does not constitute a constitutional tort, a claim of
indifference to reckless behavior would be futile under New
Jersey's Constitution.

Plaintiff is left, then, with the allegation in ¶ 26 that
the municipality has permitted a pattern or practice of
"utilizing excess force causing injuries to individual citizens."

---

indifference or recklessness.") (internal quotation marks
omitted). The supervised employee still must commit a
constitutional tort. Id. at 356. The court noted that the Third
Circuit adopts a "knowledge and acquiescence" standard, which is
more favorable to defendants. Id. (citing Robinson v. City of
Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997)).

This merits closer scrutiny. Article I, Paragraph 7 of the New Jersey Constitution protects individuals from excessive force by the police, using language nearly identical to the Fourth Amendment of the United States Constitution: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ." An action of a police officer under the New Jersey Constitution is reasonable, "regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify [the] action." State v. Brown, 14 A.3d 26, 33 (N.J. 2011). New Jersey courts have held on several occasions that Article I, Paragraph 7 of the New Jersey Constitution affords greater protection against unreasonable seizures than the federal Constitution does. State v. Pierce, 642 A.2d 947, 960 (1994).

To establish a policy or custom of the Township Police of tolerating its officers' use of excessive force, Plaintiff cites only one incident aside from the instant case: "Case of Joseph Rao (Deptford Police Brutality)." Plaintiff offers nothing else. Plaintiff does not assert any facts to suggest any link or similarity between that and the present case. There is no indication that wrongful conduct in that case bears any likeness to Sgt. Taylor's in this case. Plaintiff does not assert that Sgt. Taylor was involved in that incident, which might tend to show a practice of acquiescing to Taylor's own pattern of

behavior. The Court must assume that Taylor was uninvolved in the Rao incident, which is described as "Deptford Police Brutality," in contrast to the Weingartner incident which is described as "Personal Injuries caused Reckless[ly] by Sgt. Michael Taylor," as discussed above. Plaintiff does not assert when that incident occurred; proximity in time might suggest that the policies or customs in place at the time of the Rao incident are the same as in the present case.

The Amended Complaint, of course, need not necessarily plead all details of the prior acts giving rise to the municipality's unconstitutional policy or custom. Under Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." However in this case, the Court searches in vain for anything to tie together the present case and the case of Rao to consider them evidence of an established policy or custom.

In City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985), the Supreme Court stated that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell" when the municipal actor does not have

29

policymaking authority (Rehnquist, J., writing for a plurality).[9]
See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 167 (1970)
(defining "custom, or usage," for purposes of a § 1983 motion,
must reflect "the persistent practices of state officials," which
was cited favorably in Monell). Some circuits have held that two
isolated or sporadic incidents are not sufficient to establish a
custom or policy in a § 1983 action. See Davis v. City of New
York, 75 Fed. Appx. 827, 830 (2d Cir. 2003) ("two incidents of
unconstitutional conduct by low-level employees . . . can never
provide a reasonable basis for finding a widespread or well-
settled custom"); Palmer v. Marion Cnty., 327 F.3d 588, 596 (7th
Cir. 2003) (holding that a supervisor's "knowledge of two
incidents of misconduct by correctional officers in a period of
one year certainly fails to meet the test of a widespread
unconstitutional practice by the Jail's staff that is so well
settled that it constitutes a custom or usage"), Meehan v. Cnty.

_____

[9] It is true that pleading a single incident may be
sufficient to plead a policy or custom if the incident includes
proof that it was caused by an existing unconstitutional
municipal policy, or if the state actor has final policymaking
authority. See Tuttle, 471 U.S. at 823-24; Stomel v. City of
Camden, 927 A.2d 129, 134 (N.J. 2007) ("Municipal liability
attaches only where the decisionmaker possesses final authority
to establish municipal policy with respect to the action
ordered."). However, proof of Taylor's excessive force in this
case would not necessarily include proof of an unconstitutional
policy, nor does Taylor have final policymaking authority. Cases
permitting Monell-type claims to proceed upon pleading of a
single incident of constitutional wrongdoing, then, are
inapplicable to this case.

of Los Angeles, 856 F.2d 102 (9th Cir. 1988), cert. denied, 117
S. Ct. 1249 (1997) (proof of two unrelated unconstitutional
assaults, within a period of three months, standing alone, does
not support a finding of an official policy of harassment or
nonintervention); Cornfield by Lewis v. Consolidated High Sch.
Disct. No. 230, 991 F.2d 1316, 1327 (1993) (holding that in a
failure to train action, "two reported incidents of strip
searching at Carl Sandburg [High School] . . . fall short of a
pattern of violations sufficient to put the school board on
notice of potential harm to students"). No New Jersey decision
has been found to suggest that a single prior instance of
excessive force by another officer in the same department
suffices to give rise to municipal liability for a "custom or
usage" or a "persistent practice" of deliberate indifference to
the right to be free from excessive force in an arrest.[10] There
is no basis from which to predict that the New Jersey Supreme
Court, if faced with this issue under the New Jersey
Constitution, would permit Monell-like municipal liability under
such circumstances, contrary to the analogous precedent
interpreting § 1983.

---

[10] Indeed, the New Jersey Supreme Court has discussed the
importance of the "official policy" requirement for municipal
liability in a § 1983 action as distinguishing "acts of the
municipality from acts of employees of the municipality, and
thereby mak[ing] clear that municipal liability is limited to
action for which the municipality is actually responsible."
Stomel, 927 A.2d at 134.

Plaintiff's Amended Complaint fails to plead factual grounds that permit the Court to draw a reasonable inference that the Township Police engaged in the persistent practice of tolerating excessive force. Citing one single past incident of excessive force by officers not defendants to the present action, with no indication that the two incidents occurred within any reasonable window of time, and with nothing whatsoever to link the two incidents, is insufficient to plead a policy or custom for excessive force in a <u>Monell</u>-type claim. To hold otherwise would subject any police department that has ever faced a single charge of police brutality to defend against a <u>Monell</u>-type suit by anyone claiming present excessive force.

Therefore, in summary, the Court denies Plaintiff's motion to amend the "Second Count" of the Complaint.

## IV. CONCLUSION

For the reasons discussed above, the Court will deny Plaintiff's motion to amend her complaint because the proposed claims would be futile. The accompanying Order will be entered.

**November 28, 2012**
Date

    **s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge

32